UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOORAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-0421 |
| | ) | |
| BLUE CRATES, LLC, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Doorage, Inc. ("Doorage") and Defendant Blue Crates, LLC are competitors in the "door-to-door storage industry." In this action, Doorage alleges that Blue Crates illegally copied Doorage's marketing video and recreated it with only minor changes, and substituting Blue Crates's color scheme and branding. Plaintiff now moves for summary judgment and an award of damages on its claim of copyright infringement. As explained here, the motion for summary judgment is granted in part and denied in part.

## BACKGROUND

### I. Doorage's marketing video

The facts are largely undisputed. Doorage is in the door-to-door storage business: the company delivers packing containers and materials to its customers' homes. Then, once the customer has packed the containers, Doorage picks the items up and takes them to a secure storage facility, returning them later, at the customer's request. (Affidavit of Doorage CEO Sean Sandona ("Sandona Affidavit") [120-2], ¶¶ 1–3.)

In October 2017, Doorage CEO Sean Sandona commissioned a designer to create a marketing video describing these services. (*Id.* ¶ 8.) Doorage paid $15,000 for the marketing videos, short animated depictions that show potential customers how they can use the company's services, display the Doorage logo and its green and pink color scheme, and include images of trucks, boxes, and other moving equipment. (*Id.*)

The videos were created exclusively for Doorage's use in marketing and advertising, and Doorage uploaded them to YouTube in February 2018. (*Id.* ¶¶ 9, 10.) All of the videos were first published on February 19, 2018; the United States Register of Copyrights issued a Certificate of Registration for each video in November and December 2019. (Pl's Statement of Material Facts (Pl's SOF") [120], Ex. 3 [120-3], Ex. 4 [120-4], Ex. 5 [120-5].)

II. **Blue Crates marketing video**

Blue Crates, LLC ("Blue Crates"), as noted, is a competitor of Doorage. Beginning in January 2015, Blue Crates also provides door-to-door storage and moving services to customers in the Chicago area. (Def.'s statement of Material Facts ("Def.'s SOF") [134], ¶ 1.) In the summer of 2018, Blue Crates hired BrandsMark Marketing to create a marketing video ("Blue Crates marketing video"). (*Id.* ¶ 2.) It is clear from the record that the Blue Crates marketing video was modeled on one created for Doorage: In July 2018, Michael Walker, Blue Crates's CEO, sent a message Blue Crates's own vendor, BrandsMark, and attached a link to Doorage's videos. (Pl's SOF, Ex. 6 [120-7] at BC 391.) In his message, Walker told his contact at Brandsmark that "[t]he videos from Doorage are a great example of what we are looking to do . . . . We would like to do the same . . . . [I]f you recreate this [Doorage video] with better imagery, we are on the right track."

Walker was even more explicit two months later. In a September 7, 2018 message, he requested that BrandsMark make a second video, one that would show viewers how the service worked. Walker attached, as a link, Doorage's own "how to" video, titled "Doorage is Super Easy," and directed Taher Shaikh of Brandsmark to "recreate the linked video exactly as it is with our branding." (Id. at BC 403.) Walker noted that Doorage's video "does a good job explaining how things work," and told Shaikh to simply "change the color scheme to Blue Crates and brand it and we should be good to go." (*Id.*) Shaikh understood that Walker sought to copy the Doorage video; Shaikh responded by noting that he "would need source files of [the Doorage] video in order to do the editing." Walker replied by explaining that "this is not our video," but "[Blue Crates]

2

like[s] the video and needs [Brandmarks] to make something just like it except for Blue Crates" and that Brandsmarks' creation "should be a very close replica of the linked video above from Doorage." (*Id.* at BC 404.) He added, "to be clear [,] this is a basic recreation of the video linked." (Id.) Later in September, Walker pulled back a bit, directing that Shaikh use the Doorage video "as a guide and not an exact replication in look" and "[w]hile the content is to mirror the suggested [Doorage] video, it cannot be a replica . . . ." (*Id.* at BC 408, 410.) But a side-by-side comparison of Doorage's video with the one created for Blue Crates reveals marked similarities in the content, illustration style, the timing and sequence, and even the accompanying music. Blue Crates posted the commissioned video to YouTube on December 1, 2018 and then uploaded its market video to the Blue Crates website on March 3, 2019. (Def.'s SOF ¶¶ 3, 5.)

In July 2019, Sean Sandona learned that Blue Crates had copied Doorage's videos and "published at least one substantially similar videos [sic] on the internet, including on YouTube, to market Blue Crates' competing storage services." (Sandona Affidavit, ¶ 13.) Sandona contacted Blue Crates' CEO, Michael Walker, and asked that Walker stop using the infringing video. (*Id.* at ¶ 14; Def.'s Resp. to Pltf's SOF [132] ¶ 17.) When Blue Crates took no action, on August 20 and August 21, 2019, Doorage's attorney sent "Cease and Desist" demand letters to Walker and to Blue Crates's registered agent, notifying Defendant that Doorage viewed Blue Crates's marketing videos as infringing and demanding that Blue Crates immediately cease using them. (Letters of Attorney Jackson, Exhibits D and E to Supp. and Am'd. Complaint [42], Exs. D, E.) Without commenting on Sandona's contacts with Michael Walker in July, Michael and Matthew Walker, who identify themselves as authorized agents of Blue Crates, have asserted in affidavits that prior to receipt of the cease-and-desist letters, neither of them knew that Blue Crates' "conduct could or would violate Doorage's alleged rights." (Affidavit of Blue Crates CEO Michael Walker ("Walker Affidavit") [120, Ex. 9] ¶ 3; Affidavit of Blue Crates Agent Matthew Walker ("Matthew Walker Affidavit") [120, Ex. 10], ¶ 3.) Blue Crates' marketing video remained posted until it was eventually removed in December 2019. (Sandona Affidavit, ¶¶ 17, 18.)

3

**III.     This lawsuit**

On July 2, 2020, Doorage filed an amended and supplemental complaint alleging copyright infringement and seeking actual damages and lost profits resulting from the alleged infringement. (Pl.'s Supp. and Am'd. Complaint [42], 2–4.) Doorage alleges that it suffered $2,175,048 in actual damages caused by Blue Crates' infringing marketing video.[1] (Pl's Mot. for Summary Judgment [119] at 13.) Blue Crates is in bankruptcy; Doorage now seeks a summary judgment that would be enforceable through payment from proceeds of any applicable insurance coverage and/or policies of non-debtors, including Blue Crates' insurer Crum & Foster.[2] (*Id.* at 13–14.)

## DISCUSSION

To succeed on its motion for summary judgment, Doorage must show that "there is no genuine dispute regarding any material fact and that [it] is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931 (7th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**I.     Copyright Infringement**

To establish copyright infringement, a plaintiff must demonstrate: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc., v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (quoting *Feist Publications, Inc. v. Rural*

---

[1] In its amended complaint, Doorage sought $375,000 in attorneys' fees, but withdrew that request in the reply brief; Doorage is not entitled to recover its attorneys' fees under 17 U.S.C. § 412 because the effective date of the registration of its copyrights in the marketing videos was more than three months after they were first published and more than one month after Doorage learned of the infringement. (See Pl's Reply Br. [137], 7 n.1.)

[2] On April 12, 2021, this action was automatically stayed after Blue Crates filed for Chapter 11 bankruptcy. On February 1, 2023, Bankruptcy Judge Carol Doyle granted Doorage's motion for relief from the automatic stay, allowing allow Doorage to proceed in this action "solely to liquidate its claims against [Blue Crates] . . . to finality," but not to collect on any judgment other than through the bankruptcy court or from "any applicable insurance coverage and/or policies of non-debtors. . . ." (Order Granting Relief, Exhibit 1 to Pl's Notice of Stay Modification [117-1].)

*Telephone Serv. Co.*, 499 U.S. 340, 361 (1991). The United States Copyright Office has issued a Certificate of Registration for each of the three Doorage videos, and the validity of their copyrights is undisputed. The court turns, then, to analysis of the question whether Blue Crates has actually copied constituent elements of Doorage's original work. "The Copyright Act affords no protection against the independent creation of a work that happens to resemble some prior creation," and a plaintiff alleging copyright infringement "must prove that the defendant actually copied its original work." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017) (referencing *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984)). To make that determination, the court considers "(1) whether the defendant actually copied the protected work; and (2) whether the copying constituted an improper appropriation." *Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*, 1 F.4th 502, 505 (7th Cir. 2021) (referencing *Design Basics LLC v. Signature Construction, Inc.*, 994 F.3d 879, 887 (7th Cir. 2021). The Seventh Circuit has explained that similarity between two works may be probative of actual copying, but wrongful copying requires a showing a substantial similarity between the defendant's work and the protected elements of the copyrighted work. *Signature Construction*, 994 F.3d at 888.

### A. Actual Copying

Where, as is often the case, there is no direct evidence of copying, a plaintiff offers evidence that "the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar', thus permitting an inference that the defendant did copy the original." *Peters v. West*, 692 F.3d 629, 634 (7th Cir. 2012). Blue Crates urges that because substantial similarity is an inquiry inherently reserved for the jury, this court must deny summary judgment. *Francorp, Inc. v. Siebert*, 210 F. Supp. 2d 961, 965 (N.D. Ill. 2001); *Cavalier v. Random House, Inc.*, 297 F.3d 8156, 822 (1st Cir. 2002) (stating that summary judgment is improper if reasonable minds could differ on the issue of substantial similarity); *Atkins v. Fischer*,

5

331 F.3d 988, 995 (D.C. Cir. 2003).³  In this case, however, there is no genuine question about whether Blue Crates actually copied Doorage's marketing video.  The undisputed messages between Michael Walker and his vendor, BrandsMark, express Walker's intention that Brandmark create a video at least modeled on Doorage's video and at most an exact replica.  The resulting Blue Crates marketing video is (as described below) nearly identical to Doorage's marketing video and uses the same style and formatting, the same step-by-step instructions on use of the company's services, and the same background music.  Blue Crates has made no attempt to rebut evidence supporting a finding of actual copying.  Therefore, the court finds that Blue Crates actually copied Doorage's marketing video and turns to determining whether Blue Crates' copying constituted an improper appropriation.

      **B.**     **Unlawful Appropriation**

Only "original works of authorship" are afforded copyright protection.  17 U.S.C. § 102(a). The substantial similarity test assesses whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."  *Design Basics,* 1 F.4th at 503 (citations omitted).  A court must "separate the protected elements of a work from unprotected elements and then assess whether the protected elements were improperly appropriated."  *Id.*  Doorage notes a number of similarities between its video and the one used by Blue Crates:

- Both videos share similar step-by-step titles ("step 1", "step 2", etc.) and similar animated illustrations.

- Both videos use the same "bouncy [background] music with [a] xylophone."

- Both videos depict animations of two hands scrolling through pictures on a smartphone containing a person, storage boxes, and the words "thank you."

---

³     Blue Crates also argues that any likelihood of confusion is a question of fact. *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1428–29 (7th Cir. 1985) (affirming an injunction against competitor's use of a trademark confusingly similar to plaintiff's own logo). Likelihood of confusion is relevant to the issue of trademark infringement; its relevance in the context of this copyright infringement case is not apparent to the court.

- Doorage's video contains a text box that pops up, prompting the user to "select a container." The Blue Crates video also contains a text box that pops up, prompting the user to "Select your crates." In both videos, the "select" instruction is followed by the image of a company-branded box arriving at the user's doorstep.

- Doorage's video instructs the user to "snap a photo" of their belongings before the items are packed into their branded container. Similarly, the Blue Crates marketing video directs users to "Catalogue with [their] phone" before the user's belongings are packed into their branded container.

- Both videos show a company-branded truck arriving at the doorstep and picking up the customer's boxed-up belongings. Doorage's tagline is "We pick it up", while Blue Crates' tagline is "We pick up and store."

(Pl's SOF ¶ 16–20.)

Blue Crates makes light of these similarities and contends that the ideas and themes in Doorage's marketing videos are unprotectable elements that are not original to the author. Essentially, Blue Crates invokes the *scènes à faire* doctrine, which renders thematic concepts or schemes unprotectable under copyright law, along with "incidents, characters, or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Atari Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616 (7th Cir. 1982). That doctrine is relevant here, Blue Crates contends, but the case it relies on, *Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 913 (7th Cir. 1996) appears to support Doorage's position. In *Reed Union*, plaintiff alleged that defendant—its competitor in the business of car rust protection—had made a knockoff of plaintiff's copyrighted video advertisement. The district court concluded that defendant's video was not a copy and that, in fact, plaintiff's video was not copyrightable at all because it was nothing more than an assemblage of *scènes à faire*. On appeal, the Seventh Circuit concluded that the district judge "was right the first time but wrong the second." 77 F.3d at 914. True, plaintiff's video used some "stock scenes," but "although the themes are not copyrightable, a unique combination of them is." *Id.* The court remanded the case, concluding that although the evidence did not support the claim that defendant had made a copy, plaintiff retained a valid copyright in its own video.

7

Here, Blue Crates is correct that copyright laws do not permit one to claim ownership over ideas or common situations. *Holmes v. Hurst*, 174 U.S. 82, 43 (1899); *Nash v. CBS, Inc.*, 899 F.2d 1537 (7th Cir. 1990). But Doorage's video, like that of the plaintiff in *Reed-Union*, is not the "'rare work that consists entirely of *scènes à faire*.'" *Reed-Union*, 77 F.3d at 914, quoting William F. Patry, 1 *Copyright Law & Practice* 338 (1994). The general ideas and themes of Doorage's marketing videos may not be protectable expressions, but the video itself as a unique combination is a copyrightable expression. Had Blue Crates merely drawn inspiration from Doorage's video, there could be no finding of wrongful copying. But given the presence of actual copying in a nearly identical arrangement as Doorage's video, an ordinary reasonable person would conclude that the Blue Crates unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value from Doorage's copyrighted work.

The court is also not persuaded by Blue Crates' argument that the words and terminology in the Doorage video are nothing more fragmentary words and slogans. *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1237 (D. Colo 2009) ("[C]opying protection does not extend to fragmentary words or short phrases that lack the minimal level of creativity necessary to warrant copyright protection."); *Magic Mktg. v. Mailing Servs. of Pittsburgh, Inc.*, 634 F. Supp. 769, 771 ("[C]olorful descriptions, such as advertising slogans are not accorded copyright protection."); *Feist*, 499 U.S. at 344 ("[F]acts are not copyrightable."); 37 C.F.R. § 202.1 (a) (stating that "words and short phrases, such as names, titles, and slogans" are not copyrightable). Doorage's video consists of animated illustrations, a sequence of events depicting Doorage's service, and a bouncy melody. The combination is original and goes well beyond names and titles. Indeed, when data is selected and arranged in an original way, even a work that contains nothing but factual elements may be entitled to copyright protection. *Cf. Feist*, 499 U.S. at 349 ("Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement."). Blue Crates attempts

to argue that its video uses different words and phrases than those that appear in Doorage's video. But the script and the visual style of the Blue Crates video are minimally distinguishable from that in the Doorage video, and both are accompanied by an identical musical score. No reasonable person would differ as to the substantial similarity between the two marketing videos. The court finds that Blue Crates infringed upon Doorage's copyrighted works and is entitled to judgment as a matter of law.

II. **Damages**

The Copyright Act states:

> The copyright owner is entitled to recover the actual damages suffered by [them] as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). Actual damages are "usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Bell v. Taylor*, 827 F.3d 699, 709 (7th Cir. 2016) (citing *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003)). The value of the infringing use to the infringer may be used to determine actual damages if the amount is not based on "undue speculation." *Id.* Doorage argues that it has suffered $2,175,048 in actual damages as a result of Blue Crates' infringement. In support of this calculation for actual damages, Doorage cites only to an affidavit from Doorage CEO Sean Sandona asserting that Blue Crates' activity "resulted in immediate loss of sales revenue and long-term recurring revenue" and setting forth the (unexplained) damages claim that Doorage filed in the Blue Crates bankruptcy proceeding. (Sandona Affidavit, ¶ 22.)

Blue Crates argues that this evidence is insufficient to support summary judgment. The court agrees that Sandona's damages claims are not based on personal knowledge and lack factual support. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th. Cir. 2004);

*Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987); *Butts v. Aurora Health Care*, 387 F.3d 921, 925 (7th Cir. 2004) ("[S]elf-serving statements in affidavits without factual support in the record carry no weight."). Furthermore, Blue Crates argues that Doorage's actual damage calculation is highly speculative and inappropriately includes lost revenue.

Doorage is correct that it is not required to prove an exact number of damages. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 518 (7th Cir. 2011) ("Plaintiffs are not required to prove damages to the exact cent; they must merely establish a 'reasonable basis for computing damages.'") (internal citations omitted). But Doorage's submissions do not even provide that reasonable basis. How Blue Crates's use of Doorage's work resulted in a loss in excess of $2 million is unexplained. When asked at his deposition whether his workbook detailing damage calculations existed in any physical form, Sean Sandona responded that it existed "in [his] head and on notes . . ." and that any physical calculations used to determine the amount of damages were written on "scratch pad" that he had not provided to his attorneys. (Ex. F of Def's Statement of Material Facts [134-6], 181:14–182:5.) In his deposition, he also repeatedly described his calculations as "super high level", "back-of-a-napkin type high level", while also describing himself as "a yellow pad life kind of guy". (*Id.*, 171:17; 181:18.)

Sandona's actual damages calculations lack evidentiary support, and the description of his methodology is unsatisfying. The court declines to enter judgment in an amount certain and will instead convene a hearing at which the parties will be expected to present evidence on the issue of the losses, and their amount, resulting from Blue Crates's display of the infringing video.

## **CONCLUSION**

Plaintiff's motion for summary judgment [118, 119] is granted in part and denied in part.

ENTER:

Dated: September 22, 2023

_____
REBECCA R. PALLMEYER
United States District Judge

10