**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DOORAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:20-cv-421 |
| | ) | |
| BLUE CRATES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BLUE CRATES, LLC'S
MOTION FOR SANCTIONS PURSUANT TO F.R.C.P. RULE 37(d)**

Defendant Blue Crates, LLC, through its attorneys, Maron Marvel Bradley Anderson & Tardy LLC, submits this Motion for Sanctions, and in support states as follows:

**I.     Introduction**

Plaintiff's withholding of documents, complete failure to investigate in response to discovery requests, and denying the existence of certain documents is sanctionable under FRCP 37(d), and dismissal of the case is an appropriate sanction. Since Defendant's initial Rule 34 request for production in 2020, Plaintiff has knowingly withheld or failed to adequately investigate discovery. Only *after* Defendant issued five Rule 37 letters, conducted multiple calls, took the deposition of Plaintiff's owner/corporate representative, briefed Plaintiff's Motion for Summary Judgment, filed a Motion to Compel, and received a non-party subpoena demonstrating the existence of the withheld documents at issue did Plaintiff finally disclose over 7,050 pages of documents and 204 spreadsheets and PowerPoints relevant to Defendant's discovery requests. This withholding of relevant documents that were clearly in Plaintiff's possession in 2020, has destroyed all semblance

of candor and faith in the completeness of the discovery that has been provided, and should result in dismissal of Plaintiff's remaining damages claim as a sanction.

## II. Discovery History

The pattern of Plaintiff's withholding of documents in this matter dates to Defendant's initial Rule 34 discovery requests in June 2020. As the court is aware, this matter involves Plaintiff's damages stemming from a copywrite infringement claim, with Plaintiff alleging that it suffered $2,175,048 in actual damages allegedly caused by Defendant using an infringing marketing video.[1] Actual damages in the context of a copyright infringement are measured by the claiming parties profit lost due to the infringing work and, obviously, multiple categories of documents are relevant to the measure of a company's lost profits, if any.

Since June 2020, Defendant has continually sought documents relevant to either the support or defense of Plaintiff's absurd claim that Defendant's use of Plaintiff's work alone resulted in lost profits exceeding $2 million. Plaintiff has consistently frustrated Defendant's discovery efforts, providing only piecemeal disclosure of relevant documents. However, following Plaintiff's July 28, 2023, supplemental disclosure (after both Plaintiff's deposition and briefing its summary judgment motion), it became clear that thousands of pages of relevant documents withheld, or Plaintiff negligently failed investigate its records in previous disclosures until its withholding of documents became obvious.

The timeline of the discovery dispute follows:

- o June 4, 2020: Defendants' Initial Rule 34 Discovery to Plaintiff (Ex. A);
- o July 29, 2020: Defendant's 1st Rule 37 Letter to Plaintiff (Ex. B);

---

[1] Juxtaposed against Blue Crates total revenues of $21,824 in 2018 and $44,483 in 2019, with no profits realized in either year, and with less than 200 views of the infringing video.

- September 23, 2020: Defendant's 2nd Rule 37 Letter to Plaintiff (Ex. C);

- April 1, 2021: Case placed on Bankruptcy Stay.

- February 1, 2023: Case removed from Bankruptcy Stay.

- February 3, 2023: Plaintiff's Motion for Summary Judgment (Doc. 118);

- February 21, 2023: Status conference where Plaintiff's counsel advised that Court that discovery is complete, and Defendant disagreed;

- February 23, 2023: Defendant's supplemental RFPs to Plaintiff (Ex. D);

- February 23, 2023: Defendant's 3rd Rule 37 Letter to Plaintiff seeking outstanding documents from June 4, 2020, through present (Ex. E);

- March 22, 2023: Plaintiff's response to 3rd Rule 37 Letter (Ex. F);

- April 6, 2023: Deposition of Plaintiff's owner and corporate representative Sean Sandona (Ex. G);

- May 11, 2023: Defendant's 4th Rule 37 Letter seeking previously requested relevant documents referenced at deposition (Ex. H);

- May 12, 2023: Defendant issues multiple subpoenas, including to Samuel Lubeck (Ex. I);

- May 17, 2023: Samuel Lubeck's subpoena response, which consists of two "Pitch Decks" with Doorage's projections (Ex. J);

- June 12, 2023: Defendant's 5th Rule 37 Letter to Plaintiff demonstrating Defendant's understanding that additional documents related to categories of relevant discovery exist (Ex. K);

- June 13, 2023: Defendant's Motion to Compel regarding discovery relevant to damages calculations and claimed lost profits and revenue (Doc. 141);

- July 28, 2023: Plaintiff's supplemental production of 7,050 pages of documents and 240 un-bates labeled spreadsheets and PowerPoints produced to Defendant (Ex. L, provided via flash drive to the court); and

- September 15, 2023: Doorage's supplemental responses to requests for production (Ex. M).

Beginning in July 2020, Defendant was required to engage in Rule 37 calls and letter writing to convince Plaintiff that its disclosures were clearly missing documentation relevant to Plaintiff's claimed damages, presented by Plaintiff at that time in two page

"workbooks". (See, Ex. N and O). However, after months of attempting to obtain discovery on Plaintiff's profits, revenues, marketing efforts, and other factors that would evidence and impact to profits, and with those efforts ongoing in 2021, the case entered a bankruptcy stay.

When the stay was lifted in 2023, Plaintiff did not contact Defendant to complete discovery. Instead, Plaintiff immediately filed a Motion for Summary Judgement, and signaled to the court a belief that discovery was complete. Indeed, at the first status conference after the stay lifted, despite Plaintiff's statement it believed discovery was complete, Defendant requested and was afforded time to complete discovery that predated the stay to respond to Plaintiff's Motion for Summary Judgment. Defendant immediately requested supplementation of previous discovery and responses to its two 2020 Rule 37 letters. Defendant also made efforts to clarify or refine the categories of documents sought with a supplemental Rule 34 Request for Production (Ex. D and E). The outstanding categories of documents relevant to the damages Defendant included the following:

- o Financial Statements, balance sheets, income statements
- o Sales reports.
- o Investor reports, including board meeting reports.
- o All Doorage's projections of future revenue, costs, and profits from 2016 to present.
- o All documents used to calculate the claimed $2,175,048 claimed damages.
- o All materials relating to SEM from 2016, including impression counts and return on SEM spend. (See Ex. A, D, and E).

In response, Defendant continued to receive unfounded objections and the piecemeal production of documents, prompting additional attempts at Rule 37 discussions all aiming simply to obtain documents relevant to the unsupported $2 million damage claim before proceeding with the deposition of Plaintiff's corporate representative, Sean Sandona ("Sandona"), and responding to Plaintiff's Motion for Summary Judgment.

In response, Plaintiff's counsel wrote to Defendant on March 22, 2023, stating "[a]s to Exhibits E and F[2] attached to Blue Crates' Rule 37 Letter, Doorage does not believe that it has any obligation to produce any additional documents relating to these documents, . . . " (Ex. F). The letter went on to state that if Blue Crates wished to inquire about the calculation of damages methodology, it was more suitable for deposition testimony. At that time, the only documentation provided remotely supporting the claimed damages were tax returns and annual revenue summaries. There were no board meetings minutes or notes, no revenue projections (which Plaintiff's damages were based on), no pitch decks with revenue information, no communications related to SEM returns documenting how the infringing video impacted Plaintiff's customer acquisition, no support for revenue projections in the Plaintiff's damage calculations, and no business plans produced by Plaintiff because it did not believe it had an obligation to do so. After rounds of written discovery, three Rule 37 letters, multiple phone calls, and years for Plaintiff to investigate its records, Defendant believed all documents relevant to the Rule 26 discovery requests had been provided and proceeded with the deposition of Doorage's owner and corporate representative on April 6. 2023.[3]

During this deposition, Defense counsel came to realize that numerous documents relevant to previous requests had not been provided. Further, during questioning on the methodology Sandona used to calculate damages, Sandona acknowledged that the damages

---

[2] The documents referenced are the 'workbooks' attached to this Motion as Ex. N and Ex. O, each of which were provided without any supporting information in 2020, and during deposition Plaintiff claimed there was no supporting documentation for how the 'workbooks' generated other than back of napkin calculations and use of yellow pads that no longer exist. (See Docket entry #150 at page 10).
[3] The deposition of Sean Sandona proceeded in his personal capacity as well as his capacity as Doorage's Rule 30(b) witness.

calculations were based on pre-litigation revenue projections for Doorage, and maintained the projections and supporting documentation for the damage did not exist except on yellow pads and back of napkin tabulations. (See Ex. G at p. 147 - 148). Significantly, when presented with questions regarding projections of revenue for Doorage, Sandona denied Doorage had documents containing those projections (See Ex. G at p. 39 - 41).

Following the deposition of Sandona, Defendant issued its 4th Rule 37 letter (Ex. H) outlining the documents it believed had been withheld based on the deposition testimony. At the same time, Defendant issued subpoenas to eleven non-parties.[4] Only one of the subpoenaed parties provided a response, Samuel Lubeck. (See Ex. I). Lubeck's response provided the Defendant with two pitch decks prepared by Doorage that contained not only relevant company revenue information, but financial projections for 2018 -2021. (Ex. I).

The discovery of these documents was alarming to Defendant, and a 5th Rule 37 letter was immediately sent to Plaintiff's counsel, attaching the documents obtained from Lubeck and demanding, again, that discovery be supplemented with complete responses. (Ex. K). Out of concern that additional documents such as those received from Lubeck were being withheld, Defendant filed its Motion to Compel. (Doc. 141). The Court struck the Motion to Compel based upon Rule 37.2 (simply attaching Rule 37 letters did not suffice) but referred the matter for further discovery proceedings before Magistrate Judge Harjani (Minute Entry No. 142).

Following the 5th Rule 37 Letter, the Motion to Compel, and referral for additional proceedings on discovery, only then, with knowledge that defense counsel had become aware of the pitch decks, did Plaintiff provide yet another disclosure on July 28, 2023.

---

[4] To date, only one of the eleven non-parties subpoenaed has responded to Defendant's subpoenas. A Motion to Compel responses to these subpoenas is being filed contemporaneous to this motion.

Shockingly, Plaintiff's supplemental document production contained an additional 7,050 pages of documents and 204 spreadsheets or PowerPoints, all responsive to requests for production dating back to 2020. (Ex. L). The materials produced by Plaintiff included, among other relevant items, multiple projections for future revenue predating litigation, business plans predating litigation, communications regarding Blue Crates, a listing of all financial transactions from 2017 – 2022, Board of Directors reports, thousands of emails related to marketing efforts and reports during 2018 and 2019, additional non-specific financial information that requires further discovery and/or depositions, and other information relevant to proving or disproving the fantastical damages claim in this case.

The disclosure of extensive and highly relevant documents ***only after*** Defendant filed its Motion to Compel and demonstrated it was aware that certain documents did exist, like the pitch deck with financial projections, demonstrates the egregious violation of the discovery process and withholding of documents. Accordingly, as discussed further below, dismissal and others sanctions under Fed. R. Civ. P. Rule 37 are entirely appropriate.

### III. Argument for Sanctions for Failure to Comply with Discovery

A. <u>The Court's Inherent Power to Sanction Discovery Abuse</u>

The power of a district court to issue discovery sanctions extends to "default judgments against defendants as well as to dismissals against plaintiffs." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015). This power "should be used only when there is a record of delay [or] contumacious conduct.... In deciding what measure of sanctions to impose, the district court should consider the egregiousness of the conduct in question in relation to all aspects of the judicial process." *Greviskes v. University Research Ass'n, Inc.*,, 417 F.3d 752 at 759 (7th Cir. 2005) (citation omitted).

Federal Rule of Civil Procedure 37 sets forth procedures for enforcing discovery and sanctioning misconduct. If a party fails to produce documents under Rule 34, a court may make such orders regarding the failure as are just. Fed. R. Civ. P. 37(d). If a court grants a motion made under Federal Rule of Civil Procedure 37(d), it has broad discretion to impose sanctions, including an order: (A) designating certain facts be taken as established; (B) baring the disobedient party from introducing evidence or claims; and (C) striking pleadings, staying the litigation until the obligation is satisfied, <u>dismissing the action</u>, or of default. Fed. R. Civ. P. 37(d) (emphasis added). The court may also award reasonable expenses, including attorney's fees, against the party failing to act, unless the court finds that the failure was substantially justified, or that other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(d).

Here, there is a clear record of delay, withholding of documents, and/or the failure to properly investigate in response to Defendant's Rule 34 discovery and Rule 37 efforts to obtain compliance with discovery. All of which has resulted in compromising the integrity of the litigation process in this matter, and eroded the faith the defense and the Court can possibly have that Plaintiff has provided all relevant information and documents requested in this matter. As discussed, these actions require sanctions and dismissal is not an unreasonable sanction.

B. <u>Withholding of Discovery and/or Failure to Reasonably Investigate Completeness of Responses</u>

Plaintiff clearly withheld relevant documents or failed to reasonably investigate whether responses to Defendant's discovery requests were complete. The Federal Rules of Civil Procedure make clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to

the needs of the case." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant in a discovery context if it is relevant to the subject matter of the litigation as Rule 26(b)(1) states, not just the particular issues presented in the pleadings." *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 903 (7th Cir. 1981).

Although the burden of demonstrating relevance is on the party seeking discovery, once relevance has been shown, it is the objecting party's obligation "to show why a particular discovery request is improper." *Sandoval v. Bridge Terminal Trans., Inc.*, No. 14-CV-639, 2015 WL 3650644, at *1 (E.D. Wis. June 10, 2015). Further, "[a] party has a duty to reasonably investigate whether responses to an opposing party's discovery responses are complete." *Malibu Media v, Tashiro,* 2015 WL 2371597, at *22 (S.D. IN. 2015). "When a party fails to fulfill" its obligation to "complete a reasonable investigation when presented with the opposing party's interrogatories and document requests," the Court "may use its inherent power to enter appropriate sanctions." *Id.*

Here, sanctions are clearly appropriate for withholding highly relevant documents, or failing to reasonably investigate whether responses to Defendant's discovery were complete regarding highly relevant categories of discovery. Indeed, there can be no doubt that the documents withheld until July 28, 2023, were always relevant to the litigation and responsive to the categories of discovery sought by the Defendant. Indeed, the instances of withholding of discovery and/or failure to investigate in this action are copious. For ease, a summary of some of the violations is presented in the table below.

| Category of Documents Requested 2020 and 2023 | Withheld or not Investigated until July 2023 Bates Label DOORAGE – 002768-009817 and Unlabeled Spreadsheets |
|---|---|

| | |
|---|---|
| Records related to Plaintiff's Revenue – Ex. A. | - Relevant Spreadsheets on Revenue Contained in Ex. __; for examples sheets labeled: Corporate Overhead Costs; Financial Summary Months; Itemized Payouts; Launch Expenses; Monthly Cash Flow Projections; Outstanding Balances Book; and Market Overhead Costs.<br>- All Doorage transactions from 2017 – present (009722-009817) |
| Documents related to damages claim – Ex. A<br>And Deposition Transcript Ex. G. | - Unbates Labeled Spreadsheets in Ex L: 4 Year Model; Asset Inventory; Pitch decks; forecasts.<br>- 2017 Business Plan with projections (008992)<br>- 2018 Business Plan with projections (009028)<br>- Updated 2018 Business Plan with projections and Pitch Deck with projections included. |
| Documents in anyway Related to Blue Crates Ex. A. | - Emails from Doorage discussing Blue Crates as a competitor or use of Blue Crates as a search term in add campaigns. (002768; 005793). |
| Financial Statements, balance sheets, income statements – Ex. A, D, and E | - All Doorage transactions from 2017 – present (009722-009817)<br>- Unlabeled Financial Spreadsheets in Ex. L |
| Investor Reports and Board Reports – Ex. A, D, and E. | - Investor Reports (008800-008815)<br>- Business Plans (previously referenced) |
| Doorage's projections for future revenue – Ex. A, D, and E. | - Unbates Labeled Spreadsheets contained in Ex L: 4 Year Model; Asset Inventory; Pitch decks; Sales forecasts.<br>- 2017 Business Plan with four year projections (008992)<br>- 2018 Business Plan with four year projections (009028)<br>- Updated 2018 Business Plan with four year projections and Pitch Deck with projections included. |
| Documents used to calculate damages claim – Ex. A, D, and E. | - Still not provided. Or some versions of projections and spreadsheets containing projections outlined above that require explanation that could not be provided at deposition because not produced in advance of deposition. |
| Documents related to Search Engine Marketing and revenue – Ex. A, D, and E. | - Emails with Web design, Web Marketing firms from 2017 – present detailing what marketing campaigns were being used and were effective as well as marketing metrics relevant to effects Defendant's infringing video may have had on Plaintiff's marketing: (002768-008799) |

As shown, documents clearly relevant to Plaintiff's damages claim such as: business plans, sales spreadsheets, itemized expenses, pitch decks and revenue projections prepared by Sandona, board meetings, as well as correspondence referring to "Blue Crates," communications related to digital marketing, increases and decreases in customer conversion contained in marketing correspondence, and revenues, were all either withheld by Plaintiff or demonstrate a total failure to adequately investigate the completeness of discovery since 2020. Indeed, there can be no question that the classes of discovery discussed above and the disclosures themselves are all relevant to damages in litigation where Plaintiff brazenly claims every dollar Plaintiff fell short of projected earnings is attributable to the Defendant.

Further support for the relevance of the withheld projections and early revenues can be taken from Sandona's deposition testimony, where Sandona confirmed that the damages calculations referenced in Plaintiff's Motion for Summary Judgment (See again, Ex. N and O) were based on revenue projections. (See Ex G at p 178-185). Again, there can be no doubt that Plaintiff was aware the revenue projections and early company financial data was directly relevant to the damages claim being made by Plaintiff as early 2020. Regardless, these projections and supporting information were withheld.

Significantly, these highly relevant documents were delivered only *after* Plaintiff's deposition, a Motion for Summary Judgment was briefed (now ruled on), a Motion to Compel was filed by Defendant, Defendant's five Rule 37 letters (since 2020), and ***only after Defendant discovered that these relevant documents likely did exist by obtaining pitch decks with projections from a non-party***, leaving one to wonder if Defendant had

not discovered the decks and projections through non-party subpoenas if the documents in Ex. L would have ever been disclosed.

This pattern of withholding relevant documents, or at the very least the failure to reasonably investigate whether responses were complete, is an egregious abuse of the discovery process, has wasted the court's time, wasted the Defendant's time and resources, and created an extraordinary delay that will cause the Defendant to revisit all previous discovery, defenses, review of damages, reconvene Plaintiff's deposition, and revisit subpoenas (see Motion to Compel subpoenas filed contemporaneously to this motion). Worse, it leaves the question of "what else is missing?" open and unanswerable, tainting the litigation process to the point that Plaintiff's discovery responses cannot be relied upon to be complete going forward and sanctions are appropriate.

C. <u>Magnitude of Appropriate Sanction</u>

Plaintiff's willful and intentional course of withholding discovery or failing to investigate are sanctionable are each sanctionable by dismissal. "[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). A court must find by a preponderance of the evidence that the responsible party acted (or failed to act) "with a degree of culpability that exceeds simple inadvertence or mistake before it may choose dismissal as a sanction for discovery violations." *Id*. at 776, 778. "A district court may dismiss a case as a sanction for discovery abuse if it finds that the party's actions displayed willfulness, bad faith, or <u>fault</u>, and if dismissal would be a proportionate response to the circumstances." *Watkins v. Nielsen*, 405 Fed. App'x 42, 44 (7th Cir. 2010).

"<u>Fault</u>, in contrast to willfulness or bad faith, does not require a showing of intent, but presumes that the sanctioned party was guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Ramirez*, 845 F.3d at 776. Finally, the magnitude of a sanction of dismissal in a civil case involving money is less serious than dismissal where one's liberty interests are at stake. *Id*.

When considering whether to dismiss an action as a sanction under Rule 37, the court should consider: "(1) the willfulness of the non-compliant party, bad faith, or <u>fault</u>; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance." *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc., 271 F.R.D. 487, 502 (N.D. Ind. 2010).* Here, dismissal is appropriate.

First, Plaintiff is clearly at <u>fault</u> for failure to provide responses to discovery requests made under Rule 34 dating back to 2020. Plaintiff either withheld documents relevant to discovery, or failed to reasonably investigate the completeness of its responses, even after multiple requests for documents relevant to Plaintiff's marketing efforts and any evidence that relevant to its absurd damages claim. However, it was not until ***after*** Plaintiff's deposition, a Motion for Summary Judgment, a Motion to Compel, Defendant's five Rule 37 letters (since 2020), and after a non-party provided evidence that pitch decks and projects did in fact exist, that Plaintiff provided a more complete disclosure of relevant documents. Arguably, this course of conduct demonstrates a willfulness to withhold documents. At the very least it is clearly fault, demonstrating poor judgment or negligence in Plaintiff's reluctance to provide relevant information.

Second, while lesser sanctions than dismissal are of course available, their efficacy is in doubt. Quite simply, the Plaintiff's neglect or willful withholding of relevant documents until after Plaintiff's deposition, a Motion for Summary Judgment, a Motion to Compel, Defendant's five Rule 37 letters (since 2020), and after a non-party provided evidence that pitch decks and revenue projections did in fact exist, puts the entire discovery process and this litigation under a cloud of uncertainty. Based on this conduct, there will always be a question whether additional relevant documents are being withheld or simply still not properly sought in response to Defendant's discovery requests. Because this cloud cannot be cleared, lesser sanctions are unlikely to cure the damage done by Plaintiff's actions.

Third, the prejudice to Defendant is obvious. Even setting aside the question of reliability of the completeness of disclosures, Defendant must now reevaluate its theories of the case after this case has been pending for years. Must reinitiate Sean Sandon's deposition, piece together how these newly discovered documents fit the puzzle that is the Plaintiff's damage claim, and determine if anything outside of non-existent yellow pads, back of napkins, or just Mr. Sandona's projections in his "numbers noggin," are of use in defending the outrageous damages claim. All this must be conducted **AFTER** a finding of liability on summary judgment, that was briefed before Defendant had an opportunity to fully evaluate the withheld documents disclosed on July 28, 2023. The prejudice is clear.

Fourth, Defendant's original Rule 34 requests for production were delivered to Plaintiff in June 2020. The case was pending for more than a year before it was placed in a bankruptcy stay from April 2021 through February 2023. During the stay, Plaintiff remained active in its pursuit of the defendant through participation in the bankruptcy action and filing a DEC action against the Defendant's insurer. Following the lifting of the

stay, Defendant immediately sought supplementation of discovery. And, as described multiple times above, Plaintiff continued to withhold production of relevant documents. Further, it is unreasonable to argue that Plaintiff was unaware of the documents produced in the July 28, 2023 disclosure. Because most of the documents withheld until July 28, 2023, were clearly available to the Plaintiff from the first submission of discovery in June 2020, the length of delay has been significant.

Fifth, Plaintiff was provided with extensive warnings regarding the need to comply with the discovery process via five detailed Rule 37 letters from Defendant to Plaintiff. (Exhibits B, C, F, I, L). However, no direct Court warnings were given to Plaintiff regarding compliance with discovery because Defendant attempted to work out the matter via Rule 37 letters and phone calls, Defendant was told the documents didn't exist, and Defendant relied upon Plaintiff' representations (until it found out that the documents did exist). Once Defendant discovered that relevant evidence besides discarded yellow notepads did in fact exist, it sought Court intervention. Plaintiff, realizing that it had been caught, made an effort to comply with discovery. However, as outlined throughout this motion, these efforts were far too late to be considered reasonable.

Accordingly, dismissal and an award of attorneys' fees is clearly appropriate.

### IV. Conclusion

WHEREFORE, Defendant Blue Crates, LLC, respectfully requests that this court find that sanctions against the Plaintiff are appropriate under Rule 37(d) and enter an Order awarding Defendant its fees for pursuit of the withheld documents and the filing of this motion, dismiss the case with prejudice, and any other relief the court deems appropriate as sanctions against the Plaintiff.

Respectfully submitted,

**Maron Marvel Bradley Anderson & Tardy LLC**

By: */s/ Robert Petti*
Dan Alexander, ARDC #6308464
Robert Petti, ARDC #6294744
191 N. Wacker Drive – Suite 2950
Chicago, Illinois 60606
(312) 579-2021
dalexander@maronmarvel.com
rpetti@maronmarvel.com
***Attorneys for Blue Crates, LLC***